UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDWARD ROSSI, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>REUBEN TIMOTHY PURVIS, III, et al.,<br><br>Defendants. | Case No. 23-cv-04148-PCP<br><br>**ORDER GRANTING MOTION TO COMPEL ARBITRATION IN PART AND DENYING LEAVE TO AMEND** |

Plaintiffs in this matter are a company named StormQuant and one of its major shareholders, Edward Rossi. Defendants are StormQuant's former CEO Reuben Timothy Purvis III, his wife Heather Purvis, and an LLC established by Mr. and Mrs. Purvis. In response to this lawsuit, defendants moved to compel the arbitration of plaintiffs' claims in this federal action as well as plaintiffs' claims in a pending state court lawsuit. Defendants do so on the basis of an arbitration provision in a 2021 agreement between Mr. Purvis and StormQuant that Mr. Rossi signed on StormQuant's behalf.

In response to defendants' motion, plaintiffs argue that the 2021 agreement and its arbitration provision are not enforceable, that Mrs. Purvis and the LLC cannot rely upon the agreement to require arbitration of the claims against them because they are not signatories, and that the provision does not encompass the disputes presented here. For the reasons set forth below, the Court concludes that the arbitration provision is enforceable and that it covers all of the claims in this action, including the claims against non-signatory parties. The Court, however, cannot enjoin the state court's consideration of the claims pending in that separate action. Defendant's motion is therefore granted in part and denied in part. Plaintiffs' motion for leave to file an amended complaint is denied without prejudice.

## I. Background

Except as indicated, the following facts are not disputed.

StormQuant was founded as a limited liability company in 2017. Mr. Rossi was an angel investor but not an employee or an executive of StormQuant. He invested $800,000 by 2018.

Mr. Purvis became CEO of StormQuant in January 2019. Like the other founders and executives, he was paid solely via consulting fees pursuant to a consulting agreement. Those payments were made to defendant Collis Systems, the LLC controlled by Mr. Purvis and his wife.

StormQuant was reorganized as a Delaware corporation, StormQuant, Inc., around the same time. As part of this process, Mr. Purvis sought to transfer assets from StormQuant LLC to StormQuant, Inc., and to make himself a shareholder. Mr. Rossi says he learned about the creation of StormQuant, Inc. that month and "immediately objected and demanded a further explanation." Dkt. No. 1, at ¶ 29.

In March 2019, an outside investor committed to investing $5 million in StormQuant. Dkt. No. 21-14, at 8.

In April 2019, the StormQuant board of directors approved resolutions that, among other things, authorized the company to enter into indemnification with directors and officers and employment agreements with employees. *See* Dkt. No. 22-1, at 37–41. According to the complaint, Mr. Purvis had previously authorized preparation of employment agreements for himself and several other executives. Mr. Purvis's employment agreement provided an annual salary of $180,000, certain additional benefits, a grant of one million shares to Mr. and Mrs. Purvis, and twelve months of severance pay. Mr. Purvis's employment agreement was executed in April 2019. Mr. Rossi says he did not know about these developments at the time.

Sometime in June 2019, the outside investor signed a term sheet regarding the anticipated $5 million investment. That same month, after "several months of negotiations," Mr. Rossi agreed to accept 3.25 million shares of StormQuant, Inc. in exchange for his interest in the original LLC, which would be shut down after all of its assets were transferred to the corporation. Mr. Rossi says he did not know about the employment agreements with Mr. Purvis and the other executives and that he would not have agreed to the share swap if he had. *See* Dkt. No. 1, at ¶ 31. Mr. Rossi also

became a board member around June 2019. In preparation for his joining the board, Mr. Purvis emailed Mr. Rossi a copy of the board's April 2019 resolutions, which included the authorization to enter into indemnification and employment agreements and blank copies of those agreements. Dkt. No. 22-1, at 235. Mr. Purvis says that Mr. Rossi also entered into an indemnification agreement with StormQuant, Inc. in June 2019. *Id.* at 4.

On July 26, 2019, the expected outside investment in StormQuant fell through. Mr. Rossi, however, continued investing in StormQuant, contributing a total of over $2 million since April 2019. Mr. Rossi says that throughout this time, Mr. Purvis did not tell him about the existence of potential liability under the employment agreements. In December 2020, for example, Mr. Purvis sent documents to Mr. Rossi representing that StormQuant had no outstanding obligations above $50,000. From April 2019 until December 2022, no payments were made under the employment agreements directly to Mr. Purvis or any of the other executives, but payments ultimately totaling $100,000 continued to be made to Collis Systems (Mr. Purvis's LLC).

In June 2020, Mr. Rossi emailed Mr. Purvis asking about the "current salary's [sic]" for executives, including Mr. Purvis, who were being considered for executive compensation plans including stock options. Dkt. No. 22-1, at 238. Mr. Rossi stated that he "assume[d]" those salaries were "currently being deferred and accrued for." *Id.* Mr. Purvis responded that the "current salary structure" had not been modified since 2019 and provided Mr. Purvis a "$180K" salary.

By early 2021, a dispute arose with one of the other founders of StormQuant, and that founder demanded payment under the terms of his employment agreement. Mr. Rossi alleges that this is the first time he learned about the employment agreements with Mr. Purvis and others. On February 4, 2021, Mr. Rossi emailed Mr. Purvis and asked, "Did you have any written employment agreement signed by [the other founder]?" Dkt. No. 21-13, at 3. Mr. Purvis responded that he and the other executives and founders "were paid to our respective LLCs or side company," and that the "contracts that [sic] created in February of 2019 would only be executed when we received our seed funding round so that we could start normal payroll, benefits, etc." *Id.* at 2. Mr. Purvis also said he would "get a second opinion from our employment attorney." *Id.*

By late 2021, StormQuant was struggling financially and had trouble making consulting

3

payments to Mr. Purvis's LLC. Mr. Rossi says that Mr. Purvis then proposed that he forego further compensation (including consulting fees) in exchange for additional StormQuant shares.

On December 7, 2021, Mr. Purvis and StormQuant executed a Restricted Stock Purchase Agreement (RSPA) in which Mr. and Mrs. Purvis purchased an additional 2.25 StormQuant shares for $22.50. Mr. Rossi signed the agreement on behalf of StormQuant as a director. Dkt. No. 12-1, at 20. Mr. Rossi says he did so with the "understanding that (i) Purvis was foregoing any future consulting payments or other compensation; and (ii) the Employment Agreements, including Purvis Employment Agreement, were not valid or enforceable." Dkt. No. 1, at ¶ 49. Mr. Rossi says that he "would not have executed the Restricted Stock Purchase Agreement … if he thought Purvis considered the employment agreements to be legally binding." *Id.*

The RSPA between Mr. Purvis and StormQuant included an arbitration provision. It reads:

> (1) *Arbitration*. In consideration of the promises in this agreement, the purchaser agrees that any and all controversies, claims, or disputes with anyone (including the company and any employee, officer, director, shareholder or benefit plan of the company in their capacity as such or otherwise) arising out of, relating to, or resulting from this agreement, shall be subject to binding arbitration under the arbitration rules set forth in California Code of Civil Procedure section 1280 through 1294.2, including section 1283.05 (the "Rules") and pursuant to California law. Disputes which the purchaser agrees to arbitrate, and thereby agrees to waive any right to a trial by jury, include any statutory claims under state or federal law, including, but not limited to, claims under Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act of 1990, the Age Discrimination in Employment Act of 1967, the Older Workers Benefit Protection Act, the Worker Adjustment and Retraining Notification Act, the California Fair Employment and Housing Act, the Family and Medical Leave Act, the California Family Rights Act, the California Labor Code, claims of harassment, discrimination or wrongful termination and any statutory claims. The purchaser further understands that this agreement to arbitrate also applies to any disputes that the company may have with the purchaser.
>
> (2) *Procedure*. The purchaser agrees that any arbitration will be administered by the American Arbitration Association ("AAA") and that the neutral arbitrator will be selected in a manner consistent with its national rules for the resolution of employment disputes. The purchaser agrees that the arbitrator shall have the power to decide any motions brought by any party to the arbitration, including motions for

summary judgment and/or adjudication and motions to dismiss and demurrers, prior to any arbitration hearing. The purchaser also agrees that the arbitrator shall have the power to award any remedies, including attorneys' fees and costs, available under applicable law. The purchaser understands that the company will pay for any administrative or hearing fees charged by the arbitrator or AAA except that the purchaser shall pay the first $125.00 of any filing fees associated with any arbitration the purchaser initiates. The purchaser agrees that the arbitrator shall administer and conduct any arbitration in a manner consistent with the Rules and that to the extent that the AAA's national rules for the resolution of employment disputes conflict with the Rules, the Rules shall take precedence. The purchaser agrees that the decision of the arbitrator shall be in writing. The purchaser agrees that any arbitration under this agreement shall be conducted in Santa Clara County, California.

(3) *Remedy*. Except as provided by the Rules and this agreement, arbitration shall be the sole, exclusive and final remedy for any dispute between the purchaser and the company. Accordingly, except as provided for by the Rules and this agreement, neither the purchaser nor the company will be permitted to pursue court action regarding claims that are subject to arbitration. Notwithstanding, the arbitrator will not have the authority to disregard or refuse to enforce any lawful company policy, and the arbitrator shall not order or require the company to adopt a policy not otherwise required by law which the company has not adopted.

Dkt. No. 12-1, at 17–18.

Mr. Rossi alleges that, in April 2022, the dissatisfied founder filed a lawsuit claiming, among other things, breach of contract and failure to pay wages pursuant to his employment agreement.[1] Dkt. No. 21-9, at 6. According to a document received by Mr. Rossi and apparently prepared in response to the lawsuit, Mr. Purvis told StormQuant executives and investors (including Mr. Rossi) that after the outside investment fell through in July 2019, it had been "communicated clearly to the team that we would not start payroll and company benefits because we did not have adequate capital," and that the four executives, including Mr. Purvis, "were treated as independent contractors as we continued to incubate StormQuant Inc and secure

---

[1] Defendants object to Mr. Rossi's testimony regarding the dissatisfied founder's lawsuit as lacking foundation and personal knowledge with respect to his summaries of documents not provided. The Court will admit Mr. Rossi's testimony to the extent it represents Mr. Rossi's understanding of the lawsuit, but not for its actual content.

1  funding." Dkt. No. 21-14, at 8.[2]

2  In January 2023, Mr. Purvis resigned as CEO. On March 1, 2023, he filed a demand for

3  arbitration seeking $700,000 in unpaid wages under his employment agreement.

4  On August 9, 2023, StormQuant filed a declaratory action against Mr. Purvis in California

5  state court asserting that his employment agreement was not valid. Dkt. No. 12-1, at 30–42.

6  On August 15, 2023, Mr. Rossi and StormQuant filed their complaint in this action against

7  Mr. and Mrs. Purvis (as both individuals and trustees of the July 6, 2006 Purvis Trust) and Collis

8  Systems LLC. The complaint asserts claims under federal and state securities law based on

9  statements and omissions pertaining to Mr. Purvis's employment agreement, as well as state law

10 claims for fraud, misrepresentation, and breach of fiduciary duty.

11 On September 11, 2023, the defendants moved the Court to compel arbitration of

12 plaintiffs' claims in both this action and the state court action based on the arbitration provision in

13 the RSPA. On January 25, 2024, plaintiffs requested leave to file an amended complaint that

14 would, among other things, remove one cause of action under the California Corporations Code

15 and no longer seek rescission of the RSPA as a remedy.

16 **II.   Legal Standards**

17 The Federal Arbitration Act provides that a "written provision in … a contract evidencing

18 a transaction involving commerce to settle by arbitration a controversy thereafter arising out of

19 such contract or transaction … shall be valid, irrevocable, and enforceable, save upon such

20 grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The policy of

21 this statute "is to make arbitration agreements as enforceable as other contracts, but not more so."

22 *Morgan v. Sundance, Inc.*, 596 U.S. 411, 418 (2022) (cleaned up). The FAA "requires courts to

23 rigorously enforce agreements to arbitrate," but "it does not require parties to arbitrate when they

24 have not agreed to." *Johnson v. Walmart Inc.*, 57 F.4th 677, 681 (9th Cir. 2023) (cleaned up).

25 The threshold question on any motion to compel arbitration is whether the parties formed

---

[2] This document lists Mr. Purvis's name on the title page. Defendants argue that this document should not be admitted because Mr. Rossi has not established that he has personal knowledge that the document was actually prepared by Mr. Purvis (the listed author). The document is admitted to show what Mr. Rossi received but not the truth of its contents, including its apparent authorship.

6

1   an agreement. If there are no "genuine disputes of material fact as to whether the parties formed an
2   arbitration agreement," the Court may deny the motion or order the parties to arbitration as
3   appropriate. *See Hansen v. LMB Mortg. Servs., Inc.*, 1 F.4th 667, 672 (9th Cir. 2021).

4         The summary judgment standard applies to motions to compel arbitration. *See Hansen*, 1
5   F.4th at 670. The Court must "give to the opposing party the benefit of all reasonable doubts and
6   inferences." *Sanford v. MemberWorks, Inc.*, 483 F.3d 956, 963 (9th Cir. 2007). If "the existence of
7   an arbitration agreement is at issue," courts use "state-law principles of contract interpretation to
8   decide whether a contractual obligation to arbitrate exists." *Id.* at 681–82. "Although mutual assent
9   is generally a question of fact, whether a certain set of facts is sufficient to establish a contract is a
10  question of law." *Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 517 (9th Cir. 2023). The Court
11  can only grant or deny a motion to compel arbitration if there are no genuine disputes of material
12  fact as to whether an arbitration agreement was formed.

### III. Motion To Compel Arbitration

#### A. The RSPA's Arbitration Provision Is Enforceable.

15        Plaintiffs do not dispute that Mr. Rossi voluntarily executed the RSPA on behalf of
16  StormQuant, or that he and StormQuant are bound by its terms if the agreement remains in effect
17  and is valid and enforceable. Instead, plaintiffs argue that the agreement is not in effect, and that
18  even if it is, it cannot be enforced. These arguments fail.

19        Plaintiffs first argue that the RSPA is no longer in effect because the Purvis trust
20  subsequently exchanged the shares received under the RSPA for four million preferred shares, and
21  did so pursuant to a separate agreement that does not include an arbitration provision. Plaintiffs
22  contend that this later agreement, rather than the RSPA, now controls the shares at issue. But the
23  RSPA explicitly provided that "neither this Agreement nor any term hereof may be amended,
24  waived, discharged or terminated other than by a written instrument referencing this Agreement
25  and signed by the Company and the Purchaser." Dkt. No. 22-1, at 259. The subsequent exchange
26  agreement does not reference the RSPA, nor does it purport to terminate or modify any of its
27  provisions, including the arbitration provision. The later agreement thus provides no basis for the
28  Court to conclude that the RSPA's arbitration provision is no longer in effect.

1    Plaintiffs next argue that the RSPA was procured by fraud because Mr. Purvis "entered
2    into" the RSPA "under false pretenses," and that Mr. Rossi "would have never agreed to such a
3    provision had he known (a) Purvis considered the Employment Agreements to be binding; (b)
4    Purvis authorized a one-sided Indemnification Agreement and signed it on behalf of himself and
5    the Company; and/or (c) Purvis's true position that he was not really foregoing additional
6    compensation in exchange for millions of StormQuant shares, but rather was going to enforce the
7    Employment Agreement." Dkt. No. 21, at 22.

8    Plaintiffs' argument fails, however, because they do not assert that *the arbitration provision in the RSPA* was specifically procured by fraud. Instead, they challenge the validity of the RSPA as a whole on the basis that it was fraudulently induced. Under the FAA, "courts may resolve challenges directed specifically to the validity of the arbitration provision itself," but if there are no arbitration-specific challenges, "the court must send to the arbitrator any other challenges, including challenges to the validity of the contract as a whole." *Caremark, LLC v. Chickasaw Nation*, 43 F.4th 1021, 1029 (9th Cir. 2022). Specifically, "in the presence of an otherwise-valid arbitration provision, a challenge that the entire agreement was fraudulently induced … must be sent to the arbitrator." *Id.* (cleaned up). Although defendants did not raise this argument or cite *Caremark* in their petition or briefing, *Caremark*'s directive is clear: Absent a specific challenge to the arbitration provision, the Court *must* refer to the arbitrator broader challenges of the sort plaintiffs have raised with respect to the RSPA. Plaintiffs' fraudulent inducement arguments therefore do not preclude enforcement of the RSPA's arbitration provision.

Plaintiffs finally argue that the RSPA's arbitration provision is not enforceable because Mr. Purvis entered into several different agreements during his tenure at StormQuant, some of which included arbitration provisions (with varying terms) and some of which did not. *See* Dkt. No. 21, at 24. Plaintiffs contend that the existence of these different agreements means that there was never any meeting of the minds with respect to the parties' agreement to arbitrate.

That Mr. Purvis, as CEO of StormQuant, entered multiple agreements with the company is unsurprising. But the fact that these various agreements do not contain identical arbitration provisions does not mean that there was no meeting of the minds with respect to the one

8

1  arbitration provision at issue in this action. The only two agreements that contain potentially

2  conflicting arbitration provisions are Mr. Purvis's employment agreement and the RSPA. But

3  defendants only seek to compel arbitration under the RSPA, and plaintiffs do not suggest that any

4  of their claims fall within the employment agreement's arbitration provision. To the contrary,

5  plaintiffs contest whether their claims fall within the RSPA's arbitration provision at all and

6  challenge the enforceability of the employment agreement. The fact that Mr. Purvis may have

7  entered into other agreements with different arbitration provisions—provisions which no party is

8  seeking to enforce in this action—does not provide a basis for finding the RSPA or its arbitration

9  provision unenforceable or unconscionable.

10  In sum, the RSPA's arbitration provision is enforceable, and the FAA requires the Court to

11  enforce it. Plaintiffs are free to challenge the RSPA as a whole on the basis of fraudulent

12  inducement or otherwise, but they must raise these challenges in arbitration.

13  **B.     The RSPA's Arbitration Provision May Be Enforced by Nonsignatories.**

14  Mr. Purvis, who signed the RSPA, can clearly enforce its arbitration provision. But

15  plaintiffs also assert claims against Heather Purvis and Collis Systems, both of whom seek to

16  compel arbitration despite not signing the RSPA.

17  "State law determines whether a non-signatory to an agreement containing an arbitration

18  clause may compel arbitration." *Ngo v. BMW of N. Am., LLC*, 23 F.4th 942, 946 (9th Cir. 2022).

19  California law (which both parties agree applies) "allows a nonparty to enforce an arbitration

20  agreement provided the nonparty has a sufficient identity of interest with a party to the agreement.

21  In particular, an agent may enforce an arbitration agreement to which its principal is a party."

22  *Ronay Family Ltd. P'ship v. Tweed*, 216 Cal. App. 4th 830, 838 (2013) (cleaned up). So too may a

23  nonsignatory sued as an alter ego of a signatory. *Rowe v. Exline*, 153 Cal. App. 4th 1276, 1284–85

24  (2007).

25  Heather Purvis is named as a defendant in this lawsuit only in her capacity as co-trustee of

26  the July 6, 2006 Purvis Trust. Although she did not sign the RSPA herself, the agreement lists the

27  "Purchaser" party as "Reuben Timothy Purvis III and Heather Murray Purvis, Trustees of the

28  Purvis Trust dated July 6, 2006," and the signature page indicates that Mr. Purvis signed on behalf

9

of himself and Mrs. Purvis in their capacity as trustees. Dkt. No. 12-1, at 10, 20.

Collis Systems is named in only two of the claims, both for aiding and abetting. Plaintiffs assert that Collis "was founded, owned, and is operated" by Mr. and Mrs. Purvis, and that Collis "is the alter ego of [Mr.] Purvis and Heather Purvis such that the corporate formalities distinguishing them should be disregarded" because "[Mr. ]Purvis and Heather Purvis operated Collis Systems and failed to adhere to numerous corporate formalities needed for Collis Systems to exist as a truly distinct and separate entity." Dkt. No. 1, at ¶ 8. Plaintiffs also assert that Mr. Purvis and Collis Systems had an agency relationship. *Id.* at ¶ 10.

As these allegations make clear, both Mrs. Purvis and Collis Systems are sued as agents and alter egos of Mr. Purvis or the Purvis Trust. California law thus permits both to enforce the arbitration provision of the RSPA that Mr. Purvis signed on behalf of the Purvis Trust.

In arguing otherwise, plaintiffs emphasize that courts have found "boilerplate" allegations of agency relationships insufficient to compel arbitration. The cases they cite, however, are distinguishable. In *Mohamed v. Uber Techs., Inc.*, for example, the Ninth Circuit, applying California law, found general allegations that all named defendants "were the employees, agents, or representatives of each other" insufficient to allow a nonsignatory to enforce an arbitration agreement where there was "no specific indication of an actual agency relationship." 848 F.3d 1201, 1214–15 (9th Cir. 2016). Here, by contrast, plaintiffs' complaint is full of specific allegations regarding the close agency and/or alter ego relationship between Mr. Purvis/the Purvis Trust and the two nonsignatory parties. As to Mrs. Purvis, in addition to being Mr. Purvis's spouse and co-trustee, the complaint specifically alleges that she and Mr. Purvis were each acting as each other's agents. Dkt. No. 1, at ¶ 10 As to Collis Systems, the complaint alleges that the company was Mr. Purvis's alter ego, that the company belonged to Mr. and Mrs. Purvis, and that Mr. Purvis was paid "through" Collis Systems. *See id.* at ¶¶ 8, 27, 35. These are not the kind of "boilerplate" allegations found inadequate in *Mohamed*.

Accordingly, Heather Purvis and Collis Systems may each enforce the arbitration provision to compel arbitration of the claims asserted against them.

**C. Plaintiffs' Claims Are Covered by the RSPA's Arbitration Provision.**

Having determined that the RSPA's arbitration agreement can be enforced against plaintiffs by all defendants to this action, the remaining question is whether plaintiffs' claims are subject to the agreement. The arbitration provision specifies that "any and all controversies, claims, or disputes with anyone … arising out of, relating to, or resulting from this agreement, shall be subject to binding arbitration." Dkt. No. 20, at 17. "Generally, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Benson v. Casa de Capri Enterprises, LLC*, 980 F.3d 1328, 1330–31 (9th Cir. 2020) (cleaned up). In this case, however, the Court need not rely upon this preference because it is clear that all of plaintiffs' claims relate to the RSPA and must therefore be sent to arbitration.

Plaintiffs' first cause of action is for violation of federal securities laws and regulations. In this cause of action, plaintiffs allege that Mr. Purvis "falsely stated that he was foregoing any compensation owed from the company in exchange for [the] 2.25 million shares" he received in December 2021 pursuant to the RSPA; that Mr. Purvis "concealed the fact that he believed that his and the other Employment Agreements were enforceable … [by] taking 2.25 million shares of stock in 2021 in lieu of any compensation purportedly due"; and that, had he been aware of these facts, Mr. Rossi "would have never signed the Restricted Stock Agreement on behalf of StormQuant agreeing to issue Purvis 2.25 million shares." Dkt. No. 1, at ¶¶ 59–65. On its face, this cause of action relates to the December 2021 RSPA.

The second cause of action asserts violation of California securities law premised on the same factual allegations, and specifically seeks rescission of the December 2021 RSPA. Dkt. No. 1, at ¶¶ 66–70. This cause of action therefore also clearly relates to the RSPA.

The third cause of action is for fraud and misrepresentation. Plaintiffs allege, among other deceptions, that Mr. Purvis "convinced" Mr. Rossi to "execute the Restricted Stock Agreement based on Purvis' representation that he was taking the shares in lieu of future compensation from StormQuant." Dkt. No. 1, at ¶¶ 71–78. This claim again relates to the RSPA on its face.

The fourth cause of action is against Heather Purvis and Collis Systems for aiding and abetting Mr. Purvis's alleged fraudulent conduct. Because the underlying allegations of fraud

11

relate to the RSPA, so too do the aiding and abetting claims.

The fifth cause of action is for negligent misrepresentation. Plaintiffs assert that Mr. Purvis "misrepresented his belief and intention regarding the enforceability of his employment agreement," in part "in order to … receive additional shares in StormQuant." Dkt. No. 1, at ¶¶ 84–89. Because these allegations also involve the shares Mr. Purvis received via the RSPA, this claim also relates to the RSPA.

The sixth cause of action asserts that Mr. Purvis breached his fiduciary duties. Plaintiffs assert in this cause of action that because Mr. Purvis "believed that the Employment Agreements were enforceable … there was no basis for him to have StormQuant issue 2.25 million shares to him." Dkt. No. 1, at ¶¶ 93–94. Because this claim also involves the shares issued pursuant to the RSPA, it relates to the RSPA.

Finally, the seventh cause of action asserts that Mrs. Purvis and Collis Systems aided and abetted Mr. Purvis in breaching his fiduciary duties. Because the underlying claims relate to the RSPA, the aiding and abetting claims are also related to the agreement.

### D. This Court Lacks Jurisdiction To Consider Plaintiffs' State Court Claims.

Defendants also ask the Court to compel arbitration of plaintiffs' state court claims pursuant to 9 U.S.C. § 4 and to stay the pending state court proceedings. The complaint in that case seeks a declaratory judgment that Mr. Purvis's April 2019 employment agreement is void, invalid, or unenforceable, and that the arbitration agreement contained in that employment agreement is invalid, unenforceable, or unconscionable. Plaintiffs also seek a declaration that the arbitrator does not have jurisdiction to resolve disputes over the enforceability or validity of that employment agreement.

This Court generally lacks the power to stay state court proceedings. The Anti-Injunction Act prohibits any "court of the United States" from enjoining state court proceedings "except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. None of these exceptions apply here.

Defendants have not identified any federal statute specifically authorizing the injunction they seek. Instead, they contend that enjoining the state proceedings is necessary to protect this

Court's jurisdiction and judgments. Defendants, however, fail to demonstrate such necessity.

Defendants have not identified any manner in which the outcome of the state proceedings will interfere with this Court's decision to compel arbitration of the federal claims presented in this lawsuit. In their state court complaint, plaintiffs are pursuing state law claims entirely different from those at issue here, and plaintiffs do not seek any declaratory judgment involving the December 2021 RSPA at issue in this action or its arbitration provision. Indeed, the state complaint does not even mention the RSPA explicitly.

Defendants nonetheless contend that the inclusion in the state court complaint of a factual allegation about Mr. Purvis's 2021 share purchase is sufficient to create a potential conflict. *See* Dkt. No. 12-1, at 36 (quoting allegation from state court complaint stating, "To make matters worse, Purvis subsequently committed to forego all compensation for his service in exchange for millions of StormQuant shares being assigned to him and his wife, through a family trust."). Based on this sentence alone, defendants assert that plaintiffs' "allegations in the state court action are premised on the shares [Mr. Purvis] received in the Restricted Stock Purchase Agreement." But the mere possibility that this factual issue will be addressed in the state court proceedings does not pose any threat to this Court's jurisdiction or to its judgment that the federal claims asserted in this lawsuit are subject to the RSPA's arbitration provision.

Defendants also appear to argue, on the basis of the same sentence, that the state court claims relate to the RSPA and are therefore subject to its arbitration provision; that Section 4 of the FAA, 9 U.S.C. § 4, entitles them to an order "directing that such arbitration proceed in the manner provided for in [the RSPA]"; and that enjoining the state proceedings is necessary to protect that requested order. But even if the arbitration provision did encompass plaintiffs' state court claims (which is doubtful), this Court would lack jurisdiction to issue the requested order. The FAA "does not confer federal question jurisdiction." *Circuit City Stores, Inc. v. Najd*, 294 F.3d 1104, 1106 (9th Cir. 2002) (cleaned up). Instead, the Court must possess jurisdiction over the underlying dispute between the parties. Plaintiffs' state court complaint does not include any federal claims, and the state court parties are all alleged to be citizens of the same state. This Court would therefore lack jurisdiction to hear plaintiffs' state court claims on their own under either 28

U.S.C. § 1331 or 28 U.S.C. § 1332. Further, the single indirect reference to the RSPA in that complaint does not render the state court claims part of the same "case or controversy" that gives rise to the federal claims at issue in this action, such that this Court could exercise supplemental jurisdiction over the state court claims. *See* 28 U.S.C. § 1367(a). Because the Court lacks jurisdiction to issue an order compelling arbitration of the state court claims as defendants request, there is no need for the Court to enjoin the state court proceedings to protect that order.

In short, defendants have failed to show why an injunction staying the state court proceedings is permitted notwithstanding the Anti-Injunction Act. Defendants' motion is therefore denied to the extent it seeks relief with respect to the state court proceedings.

### E. This Action Will Be Stayed Until July 1, 2024.

Section 4 of the FAA directs that, in a suit involving claims subject to an arbitration agreement, the Court "shall on application … stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." The Ninth Circuit, however, has carved out an exception to this language, concluding that "[n]otwithstanding the language of section three, a district court may either stay the action or dismiss it outright when … the court determines that all of the claims raised in the action are subject to arbitration." *Forrest v. Spizzirri*, 62 F.4th 1201, 1204–05 (9th Cir. 2023) (cleaned up).

The circumstances here would justify dismissing plaintiffs' complaint outright under this exception. Recently, however, the Supreme Court granted the petition for certiorari in *Forrest* in order to decide whether the FAA allows district courts to dismiss a case when all claims are subject to arbitration or whether the suit *must* be stayed. Given the possibility of a change in this area of the law, the Court will stay this case until July 1, 2024. In the absence of new authority precluding dismissal, this case will be dismissed on that date. Should the Supreme Court hold that such a dismissal is not permissible, the stay will remain in place until the parties have completed their arbitration of plaintiffs' claims.

## IV. Motion for Leave to Amend

Separately, plaintiffs have filed a motion for leave to file an amended complaint. The plaintiffs' proposed amended complaint would remove one cause of action, modify another, and

14

no longer seek rescission of the RSPA as a remedy. Because the Court has concluded that the claims in the current operative complaint must be arbitrated, however, the motion for leave to amend is denied as moot. This denial is without prejudice to the parties' ability to seek amendment in arbitration in accordance with the applicable arbitration rules.

## V. Conclusion

Defendants' motion to compel arbitration is granted. All claims in this action are subject to the RSPA's arbitration provision and the parties are ordered to proceed with arbitration according to the terms of the agreement. Defendants' motion to compel arbitration of the state court claims and to stay the state court proceedings is denied. Plaintiffs' motion for leave to file an amended complaint is also denied.

This action shall be stayed while the parties pursue arbitration. The Court will dismiss this case on July 1, 2024 unless new authority requires that the stay be extended for so long as the arbitration proceedings are ongoing.

**IT IS SO ORDERED.**

Dated: January 29, 2024

P. Casey Pitts
United States District Judge

15